United States District Court
Middle District of Florida
Jacksonville Division

**RONALD E. SHOLES, P.A.,**

    *Plaintiff,*

v.                                                                                          **NO. 3:21-cv-494-MMH-PDB**

**CHARLENE CAMPBELL ET AL.,**

    *Defendants.*

___

## Report & Recommendation

This is an interpleader action. Doc. 4. Before the Court is a motion for default judgment against ten of fifteen defendants. Doc. 31. The defendants who have appeared have no objection. Doc. 31 at 4. No one has responded to the motion.

## Background

Following a car accident, Charlene Campbell retained lawyers with the firm of Ronald E. Sholes, P.A., to represent her in a personal injury lawsuit. Doc. 4 ¶ 18. She settled for $100,000. Doc. 4 ¶ 19. She owes $56,200 in attorney's fees and costs to the firm and $223,694.73 in medical bills to fourteen entities. Doc. 4 ¶¶ 20, 21. The firm brought this action in state court against her and the entities to resolve entitlement to the settlement proceeds. One entity—Blue Cross and Blue Shield of Florida, Inc. ("Florida Blue")—removed the action to this Court under 28 U.S.C. § 1442(a)(1). Doc. 1.

In the "wherefore" clause of the complaint, the firm requests an order:

[1.] requiring Defendants to interplead in this cause to settle the respective rights to the sum that is not in the possession of [the firm];

[2.] authorizing and directing [the firm] to pay into the Registry of the Court the sum of $100,000.00, less attorney's fees and costs to which the Court deems [the firm] entitled;

[3.] restraining each and every Defendant from commencing any court action against [the firm] or any Defendant, or either of them, in any manner to seek to recovery there [sic] reference settlement money, or any part of the sum, or to recover from [the firm] any damages for failure of [the firm] to deliver the sum of money to any Defendant;

[4.] forever releasing and discharging [the firm] from all liability to Defendants in this cause on account of the matters relating to this cause;

[5.] delineating how much of the remaining sum each Defendant is entitled to and distribute the funds as this Court[] finds equitable[; and]

[6.] awarding [the firm] its reasonable costs and attorneys' fees for this action, to be paid from the funds deposited into the Court Registry[.]

Doc. 4 at 5–6.

Following removal, this Court conducted a status conference. Doc. 18. At the conference, the Court stayed discovery and ordered the firm to deposit the settlement proceeds, plus interest, into the Court's registry. Doc. 18. The firm deposited $100,000 into the Court's registry. Doc. 22.

Based on failures to appear or otherwise defend, clerk defaults were entered against ten defendants:

1. Medig, LLC;

2. Associates MD Billing & Management, LLC;

3. Surgical Device Exchange, LLC (doing business as Sierra Surgical);

4. Collection Associates, LTD;
5. Starke Family Medical Centers, Inc.;
6. Neurology Associates of Starke, Inc.;
7. Graymont Equipment Distribution, LLC;
8. Advance Diagnostic Group, LLC;
9. Radiology Imaging Specialists, LLC; and
10. South Florida Anesthesia & Pain Treatment, P.A.

Docs. 26–28, 31-1, 31-2, 31-4–31-8. Campbell has not appeared, and the firm has not requested default against her. Another defendant, Sea Spine Orthopedic Institute, LLC, answered, Doc. 5, but since has "dropp[ed] all claims" to the settlement proceeds, Doc. 10.

The firm and the three appearing defendants have tentatively agreed on allocation of the settlement proceeds. Doc. 32. The agreement is tentative "because the appearing parties rest their positions on the assumption that all non-appearing parties' rights (if any) will be extinguished upon the entry of Final Default Judgments." Doc. 32 at 2. Campbell is not part of the agreement. *See generally* Doc. 32. At the status conference, the Court advised counsel that any motion for a consent judgment must "include Ms. Campbell in some way."

## Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "Courts must consider questions of subject matter jurisdiction sua sponte if not raised by the parties." *Hakki v. Sec'y, Dep't of Veterans Affs.*, 7 F.4th 1012, 1023 (11th Cir. 2021) (cleaned up).

The statute on which Florida Blue relies for jurisdiction—§ 1442(a)(1)—permits removal of an action "against or directed to … [t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office[.]" 28 U.S.C. § 1442(a)(1).

"Section 1442(a) … is a pure jurisdictional statute, seeking to do nothing more than grant district court jurisdiction over cases in which a federal officer is a defendant." *Mesa v. California*, 489 U.S. 121, 136 (1989). Thus, "regardless of whether the federal court would have had jurisdiction over the matter had it originated in federal court, once the statutory prerequisites to § 1442(a)(1) are satisfied, § 1442(a)(1) provides an independent jurisdictional basis." *Florida v. Cohen*, 887 F.2d 1451, 1454 (11th Cir. 1989); *see also Willingham v. Morgan*, 395 U.S. 402, 406 (1969) ("[T]he right of removal under [§] 1442(a)(1) is made absolute whenever a suit in a state court is for any act 'under color' of federal office, regardless of whether the suit could originally have been brought in a federal court."); *IMFC Pro. Servs. of Fla., Inc. v. Latin Am. Home Health*, Inc., 676 F.2d 152, 156 (5th Cir. 1982) ("There is no indication in [§] 1442 that the federal court must have subject matter jurisdiction over the claim against the federal officer. To the contrary, [§] 1442 itself grants independent jurisdictional grounds over cases involving federal officers where a district court otherwise would not have jurisdiction." (footnote omitted)); *Morse v. United States*, No. 2:07-cv-249-MMH-DNF, 2007 WL 4287535, at *2 (M.D. Fla. Dec. 4, 2007) ("[Section] 1442 provides both a right of removal and an independent basis for federal jurisdiction in cases where a district court would otherwise not have jurisdiction.").

4

If the removing party is neither a federal officer nor a federal agency, removal under § 1442(a)(1) is proper if the removing party (1) is "a person within the meaning of the statute who acted under a federal officer," (2) establishes there is "a causal connection between what the [removing party] has done under asserted official authority and the action against [it]" and (3) advances a "colorable" federal defense. *Caver v. Cent. Ala. Elec. Coop.*, 845 F.3d 1135, 1142 (11th Cir. 2017).

On the first requirement, "[t]he words 'acting under' are broad, and [the Supreme] Court has made clear that the statute must be 'liberally construed.'" *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 147 (2007). The "person's 'acting under' must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior." *Id.* at 152 (emphasis omitted). The assistance must go "beyond simple compliance with the law[.]" *Id.* at 153. "In other words, the private person must help federal officers fulfill a basic governmental task that the government otherwise would have had to perform." *Caver*, 845 F.3d at 1143. On the second requirement, "[t]he phrase 'relating to' is broad and requires only a connection or association between the act in question and the federal office." *Id.* at 1144 (cleaned up). "The hurdle erected by this requirement is quite low[.]" *Id.* On the third requirement, "[t]he colorable federal defense need only be plausible; its ultimate validity is not to be determined at the time of removal." *Id.* at 1145 (internal quotation marks omitted). The statute "serves to overcome the 'well-pleaded complaint' rule which would otherwise preclude removal even if a federal defense were alleged." *Mesa*, 489 U.S. at 136.

Here, in the notice of removal, Florida Blue explains Campbell was enrolled in the Service Benefit Plan—a federally sponsored health insurance

5

plan for federal employees and their dependents governed by the Federal Employees Health Benefits Act ("FEHBA"), 5 U.S.C. §§ 8901–8914—and the claim involved in this interpleader action relates to health benefits paid to treat injuries she suffered in the accident. Doc. 1 ¶ 5. Florida Blue continues,

> The Plan is created by a federal government contract between the United States Office of Personnel Management ("OPM") and the Blue Cross and Blue Shield Association ("BCBSA"), neither of which are parties in this case.
>
> In contracting to establish the Plan, BCBSA acts on behalf of local Blue Cross and Blue Shield companies that administer the Plan in their respective localities; Florida Blue is such a company and administers the Plan in Florida.
>
> The Plan's Statement of Benefits states that the Plan shall have a right to reimbursement from an enrollee for benefits paid to that enrollee, in the event the enrollee recovers for a condition or injury from a third party and the Plan had paid benefits in association with that condition or injury.
>
> Moreover, federal regulations expressly state that the Plan's interest in Campbell's $100,000 recovery shall take priority over all others' interests, including Campbell's and [the firm's] interests.
>
> Pursuant to these provisions, Florida Blue (or its subrogation/reimbursement vendor, The Rawlings Company) asserted, on the Plan's behalf, a reimbursement lien against Campbell's recoveries in connection with the Accident.

Doc. 1 ¶¶ 6–10 (citations omitted).

In its answer, Florida Blue raises four defenses: (1) any claims by the firm or the other defendants are preempted by FEHBA and regulations and contracts under FEHBA, under which Florida Blue's interest in the settlement proceeds is prioritized over other interests and is not subject to state law doctrines; (2) any claims by the firm or the other defendants against Florida Blue are barred by the United States' sovereign immunity; (3) federal common

law governs the dispute, and under federal common law any claims by the firm or the other defendants fail as a matter of law; and (4) any claims by the firm or the other defendants are barred by equitable doctrines. Doc. 8 at 5–6.

Under analogous circumstances, courts have held that § 1442(a)(1) is properly invoked. *See St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*, 935 F.3d 352, 355–58 (5th Cir. 2019); *Goncalves By & Through Goncalves v. Rady Child.'s Hosp. San Diego*, 865 F.3d 1237, 1242, 1244–51 (9th Cir. 2017); *Jacks v. Meridian Res. Co.*, 701 F.3d 1224, 1229–35 (8th Cir. 2012), *abrogated on other grounds*, *Buljic v. Tyson Foods, Inc.*, 22 F.4th 730 (8th Cir. 2021); *Anesthesiology Assocs. of Tallahassee, P.A. v. Blue Cross Blue Shield of Fla., Inc.*, No. 03-15664, 2005 WL 6717869, at *1–2 (11th Cir. Mar. 18, 2005).

For example, in *Anesthesiology*, an assignee of reimbursement payments allegedly owed to participants in health benefit plans administered by Florida Blue brought state law claims against Florida Blue in state court. 2005 WL 6717869, at *1. Some of the plans were covered by FEHBA. *Id.* Florida Blue removed the case to federal court. *Id.* The assignee moved for remand, arguing the district court lacked subject matter jurisdiction. *Id.* The district court disagreed, holding § 1442(a)(1) provided jurisdiction. *Id.*

The Eleventh Circuit affirmed. *Id.* The court explained that a health insurer contracting with a government agency under a federal benefits program is considered a person acting under a federal officer. *Id.* at *2 (*citing Peterson v. Blue Cross/Blue Shield of Tex.*, 508 F.2d 55, 56–58 (5th Cir. 1975)). The court observed that "FEHBA gives OPM the authority to administer the program by contracting with qualified private carriers, by distributing information on the available plans to eligible employees, by promulgating necessary regulations, and by interpreting the plans to determine the carrier's

7

liability in an individual case." *Id.* (cleaned up) (*citing Muratore v. U.S. Off. of Pers. Mgmt.*, 222 F.3d 918, 920 (11th Cir. 2000)). The court continued,

> [The assignee's] suit is based on [Florida Blue]'s failure to reimburse it for services allegedly covered by the plans. Each FEHBA-covered plan is governed by a contract negotiated and interpreted by OPM, with which [Florida Blue] is compelled to comply. Any duty to pay for health services arises from the terms of the plan itself. Moreover, the plan terms explicitly give [Florida Blue] the option of reimbursing the participant, rather than the provider. Thus, [the assignee] has essentially complained about actions performed under the authority of a federal officer or agency, here OPM.

*Id.* The court concluded that "§ 1442(a)(1) clearly provides jurisdiction over the claims against the FEHBA-covered plans[.]" *Id.*

Here, the three requirements for proper invocation of § 1442(a)(1) are met. First, Florida Blue is a person acting under a federal officer within the meaning of the statute. Specifically, Florida Blue is acting under OPM. The Plan is created by a federal government contract between OPM and BCBSA, which acts on behalf of Florida Blue, which in turn administers the Plan in Florida. *See* Doc. 1 ¶¶ 6, 7. Second, a causal connection is present because Florida Blue's claim to a portion of the settlement proceeds arises out of its administration of the Plan. *See* Doc. 1 ¶ 5. Third, Florida Blue presents colorable federal defenses of preemption and sovereign immunity. Doc. 1 ¶ 20a–d; Doc. 8 at 5–6; *see Coventry Health Care of Mo., Inc. v. Nevils*, 137 S. Ct. 1190, 1194 (2017) (holding that under FEHBA's preemption provision, "contractual subrogation and reimbursement prescriptions … override state law barring subrogation and reimbursement"); *St. Charles*, 935 F.3d at 357–58 (determining that preemption was a colorable defense); *Jacks*, 701 F.3d at

1235 (determining that preemption and sovereign immunity were colorable defenses).[1]

Florida Blue thus has properly invoked § 1442(a)(1), removal was proper, and this Court has subject matter jurisdiction.[2]

---

[1] In *Fountain Park Cooperative, Inc. v. Bank of America National Trust & Savings Ass'n*, the district court determined that removal of an interpleader action under § 1442(a)(1) was improper. 289 F. Supp. 150, 154 (C.D. Cal. 1968). The court reasoned that the case was not one "against" the federal officer because he was not "threatened with personal civil liability." *Id.* Another court cited *Fountain* for the proposition that "there is persuasive authority that § 1442 does not apply to interpleader actions." *Bank of the Rio Grande, N.A. v. Martinez*, No. CV 06-0123 WPL/LFG, 2006 WL 8444132, at *4 (D.N.M. June 23, 2006).

After those cases were decided, Congress amended § 1442 to include civil actions "directed to" officers, 28 U.S.C. § 1442(a), and to define "civil action" as "any proceeding … to the extent that in such proceeding a judicial order, including a subpoena for testimony or documents, is sought or issued," *Id.* § 1442(d)(1). *See* Removal Clarification Act of 2011, Pub. L. 112-51, § 2, 125 Stat. 545, 545. Courts—before and after the amendment—have found removal of interpleader actions under § 1442(a)(1) is proper. *See, e.g.*, *Foreclosure Consultants, Inc. v. ASL Invs. (Moulton Parkway) Inc.*, 185 F. App'x 639, 639 (9th Cir. 2006); *Progressive Specialty Ins. Co. v. Hanson*, No. 2:12-CV-734-WKW, 2012 WL 5966638, at *1 (M.D. Ala. Nov. 28, 2012); *Mallard Auto. Grp., Ltd. v. LeClair Mgmt. Corp.*, 153 F. Supp. 2d 1211, 1213 (D. Nev. 2001); *Eastside MRI v. Jaenson*, 824 F. Supp. 118, 121 (N.D. Ohio 1993).

Here, the interpleader action is of the type contemplated by § 1442. The action is "directed to" Florida Blue and seeks a judicial order. The action also arguably is "against" Florida Blue because Florida Blue faces adverse claims to money to which it claims entitlement.

[2] Florida Blue also relies on federal-question jurisdiction under 28 U.S.C. § 1331. *See* Doc. 1 at 15–17. Florida Blue asserts the action raises a federal question because "to the extent that [the firm] relies on state law to invalidate or reduce the Plan's reimbursement rights, a significant conflict exists between the operation of state law and federal policies and objectives." Doc. 1 ¶ 23. Florida Blue asserts that applying state law in this way "would prevent money from being returned to the government's coffers" because any money reimbursed under the Plan would go to the federal Treasury. Doc. 1 ¶ 23. Florida Blue thus argues federal common law governs the case. Doc. 1 ¶¶ 23–24. Florida Blue attempts to distinguish *Empire Healthchoice Assurance Inc. v. McVeigh*, in which the Supreme Court held that a "contract-derived claim for reimbursement is not a creature of federal law." 547 U.S. 677, 696 (2006) (cleaned up); *see* Doc. 1 at 15–16.

Florida Blue does not rely on interpleader jurisdiction under 28 U.S.C. § 1335. Section 1335 gives district courts "original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more" if "(1) [t]wo

9

## Interpleader

Interpleader is an equitable device that allows a stakeholder to bring an action joining two or more adverse claimants to a single fund. *In re Mandalay Shores Coop. Hous. Ass'n, Inc.*, 21 F.3d 380, 383 (11th Cir. 1994).

Federal Rule of Civil Procedure 22 governs interpleader actions in federal court.[3] *Johnson v. United States*, 566 F. Supp. 1012, 1014 n.3 (M.D. Fla. 1983). The rule provides, "Persons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead." Fed. R. Civ. P. 22(a)(1). Thus, "a prerequisite for the action is that the party requesting interpleader demonstrate that he has been or may be subjected to adverse claims." *Dunbar v. United States*, 502 F.2d 506, 511 (5th Cir. 1974).

Rule 22 further provides, "Joinder for interpleader is proper even though: (A) the claims of the several claimants, or the titles on which their claims depend, lack a common origin or are adverse and independent rather

---

or more adverse claimants[] of diverse citizenship … are claiming or may claim to be entitled to such money or property … and if (2) the plaintiff has deposited such money or property … into the registry of the court, there to abide the judgment of the court[.]" 28 U.S.C. § 1335(a). Section 1335 requires only "'minimal diversity,' that is, diversity of citizenship between two or more claimants, without regard to the circumstance that other rival claimants may be co-citizens." *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530 (1967). Unclear is the interplay, if any, between § 1335 and 28 U.S.C. § 1441(b)(2), which provides, "A civil action otherwise removable solely on the basis of the [diversity] jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."

Because jurisdiction exists under § 1442(a)(1), this Court need not—and in the interest of judicial economy should not—address whether this Court also has subject matter jurisdiction under § 1331 or § 1335.

[3]Florida's interpleader rule "is virtually identical to Federal Rule 22(a), and cases interpreting the federal rule are persuasive in cases arising under the Florida rule." *Rainess v. Est. of Machida*, 81 So. 3d 504, 511 (Fla. 3d DCA 2012).

10

than identical; or (B) the plaintiff denies liability in whole or in part to any or all of the claimants."[4] Fed. R. Civ. P. 22(a)(1).

Interpleader protects a stakeholder from the possibility of defending multiple claims, *Fulton v. Kaiser Steel Corp.*, 397 F.2d 580, 582–83 (5th Cir. 1968), and it is liberally applied to serve that purpose, *In re Bohart*, 743 F.2d 313, 325 (5th Cir. 1984); *Nat'l Fire Ins. Co. v. Sanders*, 38 F.2d 212, 214 (5th Cir. 1930). Interpleader also protects claimants. *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 533 (1967). "Were a[ stakeholder] required to await reduction of claims to judgment, the first claimant to obtain such a judgment or to negotiate a settlement might appropriate all or a disproportionate slice of the fund before his fellow claimants were able to establish their claims." *Id.* "The difficulties such a race to judgment pose for the [stakeholder], and the unfairness which may result to some claimants, were among the principal evils the interpleader device was intended to remedy." *Id.*

"Ordinarily, … a claimant should file an answer in interpleader, setting out his claim to the *res* in contest." *Syms v. McRitchie*, 187 F.2d 915, 919 (5th Cir. 1951). From there, "[a]n interpleader action typically proceeds in two stages." *Klayman v. Jud. Watch, Inc.*, 650 F. App'x 741, 743 (11th Cir. 2016). In the first stage, the court determines whether interpleader is an appropriate mechanism for resolving the dispute and whether to discharge the stakeholder from further liability to the claimants. *Id*. Discharge is appropriate if the stakeholder is disinterested, i.e., the stakeholder "ha[s] no interest in the outcome of the dispute between the claimants." *Ohio Nat'l Life Assurance Corp.*

---

[4]Rule 22 confers no subject matter jurisdiction and "may only be invoked where all jurisdictional requisites otherwise are met[.]" *Perkins State Bank v. Connolly*, 632 F.2d 1306, 1310 n.3 (5th Cir. 1980). Because § 1442(a)(1) provides an independent basis for subject matter jurisdiction, proceeding under Rule 22 is appropriate.

11

*v. Langkau ex rel. Est. of Langkau*, 353 F. App'x 244, 249 (11th Cir. 2009). In the second stage, the court evaluates rights to the interpleaded fund. *Klayman*, 650 F. App'x at 743.

This action is in the first stage. The firm has established interpleader is an appropriate mechanism for resolving the dispute over the proper allocation of the settlement proceeds by showing that Campbell's personal injury action settled for $100,000; the firm confronts claims to the proceeds from more than a dozen entities; and the firm has deposited the full amount of the proceeds into the Court's registry.

The firm does not request discharge, *see generally* Doc. 31, and discharge is inappropriate at this time because the firm is an interested stakeholder, claiming entitlement to more than half the settlement proceeds.

## Default Judgment

A defendant must answer a complaint within 21 days after service of process or, if the defendant timely waived service, within 60 days after the request for waiver was sent. Fed. R. Civ. P. 12(a)(1)(A). "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a).

"If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person." Fed. R. Civ. P. 55(b)(1). "In all

other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

By defaulting, a defendant admits the plaintiff's well-pleaded factual allegations. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009). Before entering default judgment, a court must ensure those allegations state a claim upon which relief may be granted. *Nishimatsu Constr. Co., v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

In an interpleader action, default judgment may be entered against a defaulting defendant. *See, e.g.*, *Trustmark Ins. Co. v. White*, No. 3:18-cv-1177-MMH-JBT, 2019 WL 4918363, at *1 (M.D. Fla. Oct. 4, 2019); *Metro. Life Ins. Co. v. Jackson*, No. 3:11-cv-967-MMH-JRK, 2013 WL 3974674, at *5 (M.D. Fla. Aug. 1, 2013). "A default judgment entered against a claimant in an interpleader action terminates that party's interest in the fund at issue." *State Farm Mut. Auto. Ins. Co. v. Wagnon*, No. 91-5088, 1992 WL 64883, at *1 (10th Cir. Mar. 30, 1992) (collecting cases); *accord Jackson*, 2013 WL 3974674, at *5. Permitting default judgment against a defaulting defendant in an interpleader action "protect[s] the interpleader plaintiff and other defendants by removing from the litigation any party who expresses no interest in the *res* of the dispute." *Protective Life Ins. Co. v. Tinney*, No. 2:14-cv-2251-TMP, 2015 WL 1402464, at *4 (N.D. Ala. Mar. 25, 2015). "Without the ability to enter a default judgment against an interpleader defendant who refuses to appear in the action, the court is unable to provide relief to the remaining defendants." *Id.* "If an interpleader defendant can prevent the resolution of an interpleader by simply refusing to appear in the action, the court cannot effectively and finally address the distribution of the interpleader *res*." *Id.*

Here, the firm has established that default judgment against the defaulted defendants is appropriate. Those defendants failed to answer the complaint after proper service.[5] The Clerk of Court (or the state's equivalent) entered defaults against them. Docs. 26–28, 31-1, 31-2, 31-4 to 31-8. By defaulting, they admit the complaint's well-pleaded factual allegations, and, as determined, those allegations show interpleader is appropriate. No defaulting defendant is an individual; accordingly, the requirements of the Soldiers and Sailors Civil Relief Act are inapplicable. Permitting default judgment against the defaulting defendants protects the firm and appearing defendants by

---

[5]The firm served process on the defaulted defendants through a process server. A corporation, partnership, or other unincorporated association subject to suit under a common name may be served "by delivering a copy of [process] to … any … agent authorized by appointment or by law to receive service of process[.]" Fed. R. Civ. P. 4(h)(1)(B). Information in returns of service establishes the defendants were served in this manner. *See* Docs. 31-1 to 31-10.

In some circuits, a district court must ascertain that it has personal jurisdiction over the defendant before entering default judgment against the defendant. *See Sys. Pipe & Supply, Inc. v. M/V VIKTOR KURNATOVSKIY*, 242 F.3d 322, 324 (5th Cir. 2001); *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999); *Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997); *Barry v. Islamic Republic of Iran*, 410 F. Supp. 3d 161, 171 (D.D.C. 2019) (citing *Mwani v. bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005)). The Second Circuit has held that a court may raise the issue sua sponte but declined to address whether a court must do so. *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 n.7 (2d Cir. 2010).

Outside the default-judgment context, the Eleventh Circuit has held a court *may* raise personal jurisdiction sua sponte but must give the parties a chance to present their positions. *Lipofsky v. N.Y. State Workers Comp. Bd.*, 861 F.2d 1257, 1258 (11th Cir. 1988). In the default-judgment context, a defaulting defendant remains free to challenge a default judgment on personal jurisdiction grounds. *See Baragona v. Kuwait Gulf Link Transp. Co.*, 594 F.3d 852, 854 (11th Cir. 2010) ("[A] defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding.").

Here, for at least one defaulting defendant, the firm alleges insufficient facts to establish personal jurisdiction. *See, e.g.*, Doc. 4 ¶ 8 (alleging Collection Associates, Ltd., is a for-profit corporation authorized to do business in Florida). Because the defaulting defendants remain free to challenge personal jurisdiction after entry of default judgment, and in the interest of expeditious resolution, the undersigned declined to order briefing and evidence on personal jurisdiction over each defaulting defendant.

14

removing from the action parties who have expressed no interest in the settlement proceeds.

The firm has thus established that default judgment against the defaulted defendants is appropriate, resulting in forfeiture by them of any claim of entitlement to the settlement proceeds.

## Recommendation

I recommend:

(1) **granting** the amended motion for default judgment, Doc. 31;

(2) **entering** default judgment against Medig, LLC; Associates MD Billing & Management, LLC; Surgical Device Exchange, LLC; Collection Associates, LTD; Starke Family Medical Centers, Inc.; Neurology Associates of Starke, Inc.; Graymont Equipment Distribution, LLC; Advance Diagnostic Group, LLC; Radiology Imaging Specialists, LLC; and South Florida Anesthesia & Pain Treatment, P.A., thereby terminating their respective interest, if any, in the settlement proceeds;

(3) **continuing** the action as between the firm and the non-defaulting defendants as to their competing claims to the settlement proceeds deposited into the Court's registry; and

(4) **directing** the remaining parties to provide a joint status report concerning their agreement to resolve the dispute or papers to end the dispute, including Campbell's position, within 30 days of entry of an order on this report and recommendation.

**Deadlines for Objections and Responses to Objections**

"Within 14 days after being served with [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to specifically object to the proposed findings and recommendations alters the scope of review, including waiver of the right to challenge anything to which no specific objection was made. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(3); 11th Cir. R. 3-1.

**Entered** in Jacksonville, Florida, on February 17, 2022.

PATRICIA D. BARKSDALE
United States Magistrate Judge

c: The Hon. Marcia Morales Howard

Counsel of record

Charlene Campbell
17565 NW 59th Loop
Starke, FL 32091

Medig, LLC
1245 Court Street, Suite 102
Clearwater, FL 33756

Associates MD Billing & Management, LLC
4780 SW 64th Avenue, Suite 104
Davie, FL 33314

Surgical Device Exchange, LLC;
915 Clint Moore Road
Boca Raton, FL 33487

16

Collection Associates, LTD
225 S Executive Drive, Suite 250
Brookfield, WI 53005

Starke Family Medical Centers, Inc.;
345 W Madison Street
Starke, FL 32091

Neurology Associates of Starke, Inc.
107 Edwards Road, Suite F
Starke, FL 32091

Graymont Equipment Distribution, LLC
1200 S Pine Island Road
Plantation, FL 33324

Advance Diagnostic Group, LLC;
5237 Summerlin Commons Boulevard, Suite 400
Fort Myers, FL 33907

Radiology Imaging Specialists, LLC
1714 SW 17th Street, Suite 300
Ocala, FL 34471

South Florida Anesthesia & Pain Treatment, P.A.
1201 Hays Street
Tallahassee, FL 32301